# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SB1 FEDERAL CREDIT UNION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-5375 |
| CUNA MUTUAL GROUP and CUMIS INSURANCE SOCIETY | : : | |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**  December 29, 2010

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. Upon careful review of the parties' briefings and the relevant case law, this Court will deny Defendants' motion.

## I. Background

## A. Factual and Procedural History

This is a case requiring interpretation of an insurance policy. Plaintiff Sb1 is a Philadelphia-based federal credit union. Pl.'s Compl. at ¶ 2, ECF No. 1-4. Defendants CUNA Mutual Group and CUMIS Insurance Society, Inc. (collectively "CUNA" or "Defendants") are Wisconsin corporations that have serviced bonds protecting Plaintiff against anticipated losses since 1977, including bonds covering relevant time period. Id. at ¶¶ 10-13.

On January 13, 2010, Plaintiff received a call from a person identifying himself as one of Sb1's "members" (i.e. customers). Id. at ¶¶ 40-42. Based on receipt of accurate responses to security questions, Plaintiff complied with the caller's instructions to change the member's telephone number of record. Id. at ¶¶ 41-42. The following day, a caller again identifying himself as the same member requested that $220,000 be accessed from the member's credit line

and transferred to his checking account. Id. at ¶¶ 43-52. Based on (1) a properly completed and signed funds transfer form accompanied by a copy of the member's passport, with both signatures matching those on file, and (2) two telephone calls by Plaintiff to the (new) number of record, Plaintiff transferred the funds into the member's checking account and then debited those funds, plus a service charge, from the member's account. Id. at ¶ 45; Pl.'s Ex. E. The funds are now believed to have been transferred to a bank in Hong Kong. Id. at ¶ 53. Plaintiff determined on January 21, 2010, that the transfer occurred without authorization of the member. Id. at ¶ 52.

Plaintiff sought coverage from Defendants pursuant to five separate provisions of a bond issued by Defendants, specifically those provisions entitled "Funds Transfer," "Electronic Crime," "Electronic Crime-Loan," "Forgery or Alteration," and "Unauthorized Signature." Pl.'s Compl. at ¶ 58; Pl.'s Ex. A, pp. 8, 10, 11, 13; Pl.'s Ex. G. Defendants have refused to cover financial losses sustained by Plaintiff arising out of the wire transfer. Pl.'s Compl. at ¶¶ 44-48, 52. As a result, Plaintiff filed a complaint against Defendants in the Pennsylvania Court of Common Pleas on September 17, 2010 (ECF No. 1-4). Plaintiff seeks recovery with three counts: first, for declaratory judgment; second, for breach of contract; and third, for bad faith conduct by Defendants, citing 42 Pa. C.S.A. § 8371. Pl.'s Compl. at ¶¶ 95-118.

On October 12, 2010. Defendants removed the case to the Eastern District of Pennsylvania on the basis of diversity jurisdiction (ECF No. 1). Defendants filed their Motion to Dismiss on October 19, 2010 (ECF No. 4). Plaintiffs responded on November 16, 2010 (ECF No. 9), and Defendants filed a reply on November 23, 2010 (ECF No. 10).

**B.    Parties' Contentions**

Defendants contend that Plaintiff did not meet the requirements for coverage under the

Funds Transfer provision because Plaintiff approved and initiated the fraudulent wire transfer without either (1) performing a proper "callback verification" for change of telephone number,[1] or (2) "follow[ing] a commercially reasonable security procedure set forth in a written funds transfer agreement, signed by the member . . . that governs the transaction and instruction." Defs.' Brief in Supp. of Mot. to Dismiss at 4; Pl.'s Ex. A, p. 10.  Defendants further contend that Plaintiff cannot seek coverage under multiple provisions and that none of the additional provisions cited by Plaintiff apply to Plaintiff's loss.  Defs.' Brief in Supp. of Mot. to Dismiss at 6-8.

In its Response to Defendants' Motion to Dismiss, Plaintiff contends that it sufficiently pled a three "governing agreement[s]" between Plaintiff and the member that (1) govern funds transfers and (2) authorize Plaintiff to "recognize" the member's signature in the payment of funds, expressly incorporating "additional security overlays," through language by which the member agreed to "additional terms and conditions . . . established by [Plaintiff] from time to time,"  meeting the requirements of the Bond provision.  Pl.'s Resp. 5-7; Pl.'s Exs. B, C, & D. Plaintiff further contends the "commercial reasonableness" of its security procedures to be a factual inquiry.  Pl.'s Resp. 5.

Plaintiff additionally contends it has stated a claim regarding coverage under each of the four other provisions, notwithstanding the exclusionary provision relied on by Defendants in rejecting its original claim for coverage.  Pl.'s Resp. 7. n.6; Defs.' Reply 4-5; Pl.'s Ex. A, p. 33-34.

---

[1] Sb1 concedes this issue.  Pl.'s Resp. 5, n.5.

**II.     Discussion**

Where federal jurisdiction is based on diversity, as it is here,[2] district courts should apply the choice-of-law rule of the state in which it sits. Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 434 (3d Cir. 2006). Under Pennsylvania choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was made, and insurance contracts are made in the state in which the last act legally necessary to bring the contract into force takes place. Id. In this case, the parties have relied on Pennsylvania law in briefs submitted to the Court and the parties have not contended any other state's law controls.

The interpretation of an insurance policy is generally a question of law. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006); see Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1175 (Pa. 2006) (stating that whether coverage exists is generally issue of interpretation for court). When the language is clear and unambiguous, the Court must give effect to the language. Kvaerner, 908 A.2d at 897. But when the provisions are ambiguous, the Court must construe the policy liberally in favor of coverage and strictly against exclusion. Slate Constr. Co. v. Bituminous Cas. Corp., 323 A.2d 141, 143-44 (Pa. Super. Ct. 1974).

Ambiguity exists if the language "is reasonably susceptible of different constructions and capable of being understood in more than one sense." Nova Chemicals, Inc. v. Sekisui Plastics Co., Ltd., 579 F.3d 319, 323 -324 (3d Cir. 2009) (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (1999)). The Pennsylvania Supreme Court has counseled that

---

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

the question of ambiguity not be "resolved in a vacuum," but, rather, by examining if a provision is "subject to more than one reasonable interpretation when applied to a particular set of facts." Madison Constr. Co., 735 A.2d at 106.

After reviewing the briefs and policy provisions, which are attached to the Complaint, the Court is of the view that the Motion to Dismiss should be denied, primarily because limited discovery may be appropriate in this case and the determination of the meaning of the policy provisions should await any discovery either party chooses to take. From reading the briefs, there appears to be some factual disputes as to what occurred. The Court is not prepared to say at this point, as a matter of law, that none of those factual disputes are relevant in determining the issue of coverage. Although it is generally true that coverage is a legal issue decided by analyzing the coverage provisions of the insurance policy as a matter of law, in some cases coverage can depend on factual predicates. The Court believes that summary judgment would be a better vehicle for determining these coverage issues as a matter of law once any discovery has taken place.

The Court also notes that Defendants have not moved to dismiss Count III, and does not know whether any of the parties desire to have any discovery on the allegations of bad faith.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied. An appropriate Order follows.

O:\CIVIL 09-10\10-5375 Sb1 Federal Credit Union v. CUNA Mutual Group\SB1 v. CUNA Memo MTD.wpd